No. 61.—Moses D. Barnes, plaintiff in error, *vs.* Edward L. Strohecker and another, defendants. E. L. Strohecker and another, plaintiffs in error, *vs.* Moses D. Barnes, defendant.

[1.] When a day is appointed for the payment of money or part of it, or doing any other act, and the day is to happen after the thing which is the consideration of the money, or other act, is to be performed, no action can be maintained for the money or other act before the performance, for in these cases the doing of the act is manifestly a *condition precedent* to the payment of the money.

[2.] In some cases of mutual dependent covenants, which *are* conditions precedent, where several acts are to be performed, if the covenant has been in part executed, and the plaintiff has performed a part of those acts, and for the residue a compensation can be given in action for breach of covenant, then he may maintain an action without averring performance.

[3.] The Jury being out in charge of a case, the Court adjourned, giving them permission, in the hearing of Counsel, who made no objection, when they had agreed upon their verdict, to disperse, and return that verdict in

the morning. The Jury agreed upon a verdict that night, as follows: "We, the Jury, find for the plaintiff." On the next morning, when they had assembled, the Court permitted them to amend the verdict according to the statement of the foreman; when a finding for the plaintiff to the full amount of his claim was inserted: *Held*, that this was regular and proper; that the intendment of the verdict, as first agreed upon, was a general finding; that is, a finding for the whole amount of plaintiff's claim, and that the amendment was nothing more than expressing this specifically.

Debt, in Bibb Superior Court. Tried before Judge POWERS, November Term, 1854.

This was an action brought by E. L. Strohecker and Robert F. Baldwin, executor of Joseph A. White, against Moses D. Barnes, for the rent of a house in Macon called the "Winn House." The plea of defendant was the general issue and total and partial failure of consideration in this: that plaintiffs, by their contract, were bound to put certain repairs on the house by the 1st of October, 1852, when the rent was to commence; that they did not make the repairs; and that, consequently, defendant could not occupy the house. The following testimony was introduced by the plaintiffs:

Smith Terrill testified, that about the 1st of October, 1852, defendant, who was then living in a house rented from witness, requested permission to remain in it a few days longer, stating that he had rented the Winn House from the 1st of October, but that it was to have some repairs. Witness assented, and defendant did remain until the 9th of October, when he moved into the Winn House, where he remained until the 12th of October, when he left it. In the same conversation, defendant offered to exchange the Winn House for witness' house, which witness declined.

Dr. Lightfoot testified, that he saw defendant during the time he (defendant) was living in the Winn House, and that he offered to sub-let the house to witness; defendant complained that the house was out of repair, and witness heard workmen then at work in the house.

Peter Arnold testified, that he had been employed by the

plaintiffs prior to the 1st of October, to repair the house, and went there for that purpose with other workmen, but that the woman then in possession refused to let them enter the house, and set dogs on them and drove them away.

For the defence, B. F. Griffin testified that about the last of October, 1852, he had rented the Winn House, under an agreement with both parties, and was to pay the rent to whoever lost this case; that the house and lot needed much repairing, and that White, the testator of one of the plaintiffs, told him that they had agreed with defendant to put certain repairs on it, at the time he agreed to rent it; the repairs were then not all done. Witness stated that he had heard that defendant left the house because his wife could not bear the smell of paint.

The evidence being closed, the Counsel for defendant requested the Court to charge, that if they believed that when the contract of rent was made, that the plaintiffs agreed to give possession by the 1st of October, and to make the repairs by that time, that these were conditions precedent, and if not complied with, the plaintiffs cannot recover. Defendant also requested the Court to charge, that if nothing was said as to the time when the repairs were to be made, that the law implied that they were to be made within a reasonable time; and if they were not done by the 1st of October or within a reasonable time thereafter, that the defendant had a right to abandon the contract.

The Court charged as requested on the first point, but refused to charge as requested on the second.

The plaintiff's Counsel requested the Court to charge, that the contracts for rent and for repairs were independent agreements, and that the furnishing the repairs, especially if no time was fixed for it, was not a condition precedent to plaintiff's right of action—this charge the Court refused to give; but charged the Jury according to the first point requested by the defendant; and also, that if they believed, that by going into the house the defendant had waived his right to have the repairs done as a condition precedent, that they should find for the plaintiffs. To these charges and refusals to charge, error

is assigned on different points by both parties. The Jury found a verdict, during the night, as follows: "We, the Jury, find for the plaintiff," and the Jury dispersed. This was by leave of the Court, previously given.

On next morning the Jury returned the verdict into Court, when the Court permitted them to amend the verdict, by stating the amount which they found for plaintiff; and this decision is assigned as error.

. The defendant moved for a new trial, on the ground of error in the Court, in its charge, on the ground that the verdict was contrary to law and the charge of the Court, and contrary to the decided preponderance of the evidence; and also on the ground of newly discovered testimony.

· In support of this last ground, he read the affidavits of Alfred Griffin and O. P. Fitzgerald, as to the condition of the house and lot in December, 1852, showing that the repairs in question had not then been made; and the defendant swore that this evidence had come to his knowledge since the trial.

The motion for a new trial was over-ruled by the Court, and this is assigned as error by the defendants; and both parties have sued out writs of error on the respective points above stated.

LANIER & ANDERSON, for Barnes.

RUTHERFORD, for Strohecker.

*By the Court.*—STARNES, J. delivering the opinion.

This was an agreement by Moses D. Barnes with the executors of Joseph A. White, by which the former contracted with the latter, sometime previously to the 1st October, 1852, to rent from them a house and lot in the city of Macon, for one year from that date, if the said executors would put certain repairs upon the premises; no time being specified by which the repairs were to be finished.

[1.] The reasonable construction to be placed upon such a transaction is, that the contemplated repairs were to be placed

upon the premises before the tenant was to enter, or within a reasonable time thereafter.    It is to be presumed that a tenant thus contracting, stipulates for repairs of which he shall have the benefit during the whole term for which he pays, and that as a consequence, he requires them to be finished by the commencement of that term, or within a reasonable period thereafter ; and of course, as a condition precedent to the payment of the rent.

If this were the contract, no action can be maintained against the tenant in this case, for that rent, unless this condition was performed ; provided, the executors were not released from the agreement by any act of the tenant.

Such is the language of the elementary *dicta,* and of the cases cited by the Counsel for the executors, in these cases.    The true rule being succinctly contained in the case of *Thorpe vs. Thorpe,* (1 *Salk.* 171,) as follows : "When a day is appointed for the payment of money or part of it, or doing any other act, and the day is to happen after the thing which is the consideration of the money, or other act is to be performed, no action can be maintained for the money or other act before the performance ; for in these cases, the doing of the act is manifestly a *condition precedent* to the payment of the money." (12 *Mod.* 462. *Dyer*, 76.   1 *Lord Ray*. 665.)

It has been urged before us that these covenants were, in the beginning, independent of each other.

We cannot conceive how such an agreement can be regarded in this light.    The effect of such a contract, as we have seen, is, that the tenant agrees to rent the premises for one year from a given day, and to pay a specified sum, if the landlord will put certain repairs upon them by the commencement of the term, or within a reasonable period thereafter.    The landlord undertakes to do this, and the contract is made.   Can these covenants, *ex vi termini,* and in the very nature of things, be aught else but dependent?

[2.] In some cases, however, of mutual dependent covenants, which *are* conditions precedent, where several acts are to be performed, if the covenant has been in part executed, and the

Barnes *vs.* Strohecker and another.

plaintiff·has performed a part of those acts, and for the residue a compensation can be given in action for such breach of covenant, then he may maintain an action without averring performance. *Boone vs. Eyre*, (1 *H. Black*. 273.)

But these are cases in which the mutual covenants go only to *a part* of the consideration; and it is reasonable, therefore, that the party should not be held to a strict compliance as a condition precedent. In the case last cited, for example, the plaintiff, for a certain consideration, conveyed to the defendant the equity of redemption in a plantation, together with the stock of negroes upon it, in the West Indies, and "covenanted that he had good title to the plantation, was lawfully possessed of the negroes, and that defendant should quietly enjoy." The breach assigned, was non-payment of consideration, and the plea filed was, that plaintiff had not a good title to *all the negroes*, and so could not convey.

It will be observed, that the breach goes to a portion of the negroes *only*—a part of the consideration. But as it appeared that the plaintiff had conveyed the equity of redemption to the defendant, who had gone into the enjoyment of the same, and thus the covenant was, in part, executed, it was thought to be "unreasonable that the defendant should keep the plantation, and yet refuse payment, because the plaintiff had not a good title to all the negroes." And hence, Lord *Mansfield* said, "Where mutual covenants go only to a part of the consideration, the defendant shall not plead it as a condition precedent. If this plea were to be allowed, any one negro not being the property of the plaintiff, would be a bar to the action." See also notes to *Pordage vs. Cole*, (1 *Saund. R.* 320, *c*.)

We cannot do better than to take the case of *Hill vs. Bishop*, (2 *Ala*. 320,) which was also cited by the Counsel for the plaintiffs, *as an illustration* of the true distinction here. In that case, it was held, that "where the defendant covenants to pay a certain stipulated rent for certain premises, and is let into possession, and continues to enjoy it until the end of his term, it is no defence to an action of covenant, that the plaintiff had

omitted to make certain improvements and repairs to the leased premises." In that case, Judge *Goldthwait* says, " the contract of lease was executed, and it would seem absurd to conclude that the right to receive the stipulated rent could be lost by the omission of the plaintiff to insert a pane of glass, or to erect a corn-crib."

Here, again, it will be remarked, the decision is put upon the principle, that the contract had been in part performed, the consideration in part enjoyed by the tenant, and the covenant, therefore, so far as it was unperformed, (and it was on this he was relying) went only to a part of the consideration; hence, it was held just that he should be thrown upon his action for damages, and not be allowed to plead that condition which had been in part performed, as a condition precedent.

The difference, in principle, between this and the case before us, will be readily seen. The consideration here has not been, in part, enjoyed by the tenant. His moving into the house and remaining there three or four days, the repairs not having been finished, and leaving, as might reasonably be inferred, because they had not been finished, was not an enjoyment of any part of the consideration, in the eye of the law. It was, rather, evidence of the total failure of the consideration for which he had contracted to pay, viz: the occupancy, for a year, of the premises, in a specified state of repair. And therefore, it cannot be said, now, that the covenant on which he is relying for his protection, goes only to a portion of the consideration, he having enjoyed the consideration in part. But it falls within the category of mutual dependent covenants, going to the whole consideration. And in such cases, they may be pleaded as conditions precedent.

The principle is not, as the ingenious Counsel for the executors argued, that if there were a part performance; that is, something done on the part of the plaintiffs, which had not been enjoyed by the tenant, that then the covenant could not be pleaded as a *condition* precedent; but it is that *the defendant must have enjoyed a part of the consideration ;* in which case, the covenant goes *only to a part of the consideration.*

Barnes *vs.* Strohecker and another.

(*Comyn's Land & T.* 528.    *Campbell vs. Jones,* 6 *D. & E.* 570.)

It was urged, that the covenants in this case, if dependent at first, and if the repairs were to be made by the executors before the commencement of the tenancy, were made independent; and consequently, the execution of the repairs, as a condition precedent, dispensed with by the acts of the tenant, (in taking possession on the 9th of October,) which amount to a waiver of the same.

We do not so regard the case made by the facts.  We cannot see how such circumstances can be regarded as evidence that the tenant waived the repairs or acquiesced in their not being completed.  On the contrary, it seems directly inferable, from the testimony, that he left the house because the repairs were not made.  The facts, therefore, can show nothing more than that the tenant, by thus going into the house, may have waived the execution of these repairs before the 1st of October, as a condition precedent to his taking possession at that time; but they do not and cannot show, that he had waived their being completed in a reasonable time thereafter.

For the above reasons, we think the Court should have given the whole of the charge, as requested by the Counsel for the defendant, with the modification, that the Jury might look to the removal of the defendant into the house, and the associated acts; and if they believed that he thereby waived the repairs, as a condition precedent to his taking possession on the 1st of October, they might so find; but that in such case the repairs were still to be done in a reasonable time thereafter; and if they had not been done, the defendant had the right to abandon the contract, and the plaintiff could not recover.

As the charge was given, we think that the minds of the Jury were rather directed to the conclusion, that they might properly consider and determine, from the facts, whether or not the defendant had not *altogether waived* the repairs, by going into and leaving the house as he did; and if they found this to be so, they should find for the plaintiffs.  There was

nothing, in the evidence, which could authorize this view of the case.

[3.] The Court was right in permitting the verdict to be amended. The Jury being out in charge of the case when the Court adjourned at evening, were permitted, by the Court, to disperse when they had agreed upon their verdict; that permission being given in presence of the Counsel, who did not object. The Jury agreed upon their verdict that night, as follows: "We, the Jury, find for the plaintiff." On the next morning, when they had assembled, the Court, finding the verdict thus informal, directed the same to be amended according to the statement of the foreman, in the presence of the Jury, as to the amount which they intended to find.

Now, the fair legal intendment of the verdict, as first agreed upon, (it being a general finding for the plaintiff,) was a finding of the whole amount claimed by him. It appears, therefore, to have been simply an omission on the part of the Jury, in not at first specifying the full amount claimed. And this omission was what the Court permitted to be supplied. If there had been a material change or alteration in the verdict allowed, the case would have been different, and might have created some difficulty.

As the case goes back, it is unnecessary for us to notice the ground presented in the motion for a new trial, on account of newly discovered evidence.

Judgment reversed.